1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| JOSEPH ZACZYK, an individual, | Case No. |
| Plaintiff, | COMPLAINT FOR: |
| v. | (1) DEFAMATION PER SE |
| AMANDA LEHMAN, an individual, and MANMAN STUDIOS, LLC, a limited liability company, | (2) DEFAMATION <br> (3) TORTIOUS INTERFERENCE |
| Defendants. | JURY TRIAL DEMANDED |

COMPLAINT

SEYFARTH SHAW LLP
999 Third Avenue, Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

Plaintiff Joseph Zaczyk ("Zaczyk"), by and through his counsel of record, hereby alleges the causes of action set forth in this Complaint against Defendants Amanda Lehman ("Lehman") and Manman Studios, LLC ("Manman").

## I.    **INTRODUCTION**

1.      This lawsuit arises from multiple overt acts conducted by Defendants to defame, harass and destroy Plaintiff's personal and professional livelihood in King County, Washington.

2.      Defendants published scathing false claims against Plaintiff on various online platforms, wherein Defendants accused Plaintiff of "drugging and raping" Lehman.

3.      Plaintiff's life has been nothing short of ruined after Defendants unleashed a litany of false and malicious attacks against him.

## II.    **PARTIES**

4.      Plaintiff Joseph Zaczyk is an individual resident of King County, Washington.

5.      Defendant Amanda Lehman is an individual who resides in and is a citizen of Kentucky.

6.      Defendant Manman Studios, LLC is a limited liability company organized under Kentucky law with its principal office in Kentucky. Upon information and belief, its sole member is Lehman.

## III.    **JURISDICTION AND VENUE**

7.      Jurisdiction and venue are proper in this Court. Plaintiff is a resident of the State of Washington and the Defendants are both citizens of the State of Kentucky, which satisfies the requirements for diversity jurisdiction under 28 U.S.C. § 1332. In addition, Plaintiff's claims against the Defendants far exceed $75,000, which satisfies the requirements for subject matter jurisdiction under 28 U.S.C. § 1332.

8.      Venue is proper because Plaintiff suffered injuries in Seattle, Washington, which is in the Western District of Washington.

COMPLAINT - 1

## IV.    EVENTS GIVING RISE TO THIS ACTION

### A.    ZACZYK AND LEHMAN MATCHED ON BUMBLE.

9.    Zaczyk and Lehman matched on the dating application Bumble in late April or early May 2024. They communicated frequently via video calls, phone calls, and text messages during this time period.

10.    Lehman's communications exhibited signs of jealousy early on, including her confronting Zaczyk about his socializing with other women.

11.    As he traveled home to Seattle, Washington from a trip abroad in late May 2024, Zaczyk flew to Denver, Colorado to meet with Lehman for a date to assess their in-person chemistry.

12.    Zaczyk and Lehman met for this date in Denver on May 29, 2024.

13.    This was the first time Zaczyk and Lehman met in person. The date lasted several hours, during which Lehman was very physical with her interactions with Zaczyk.

14.    After their date, Zaczyk and Lehman left the bar together in the same Lyft vehicle at Lehman's invitation and proceeded to Lehman's Airbnb rented apartment in Denver.

15.    Lehman invited Zaczyk into the apartment and they spent the remainder of the evening together.

16.    While at the apartment together, Zaczyk and Lehman engaged in consensual sexual intercourse. Among other things, while they were both speaking on her bed, Lehman stood up and told Zaczyk, "aren't you even going to take my clothes off."  She then proceeded to take her own clothes off and asked Zaczyk to comment on her body.

17.    Early the next morning, Zaczyk left the apartment and returned to his own Airbnb rental apartment in Denver to get ready for a business meeting.

18.    In the weeks that followed, Zaczyk and Lehman remained in contact via text messages. During this time, Lehman repeatedly pressured Zaczyk to be in a committed relationship with her.

COMPLAINT - 2

19.     Zaczyk repeatedly told Lehman during this time that he did not view them as a good match.

20.     Zaczyk and Lehman agreed to stop communicating in or about June 2024.

21.     Notwithstanding their agreement, Lehman continued to send Zaczyk text and voice messages in the weeks and months that followed. In her messages, she sent Zaczyk pictures of herself in suggestive outfits and asked Zaczyk to be her sexting buddy.

22.     On July 10, 2024, Lehman sent Zaczyk a 15 minute long voice message in which she, among other things, thanked him for their time together and for being chivalrous during their date.

**B.     LEHMAN BECOMES JEALOUS AND TURNS ON ZACZYK.**

23.     Thereafter, the nature and tenor of Lehman's communications changed.

24.     Although Lehman's behavior had changed and became odd, she never accused Zaczyk of drugging or raping her during their in-person interaction in Denver in May 2024 or in any of her communications with Zaczyk in the ensuing weeks.

25.     After Lehman left her 15-minute voicemail on July 10, 2024, she stalked who Zaczyk was "following" on Instagram and became quite upset and jealous after she saw Zaczyk was "following" a woman that she claimed looked like Lehman.

26.     The next day after Zaczyk did not respond to her voicemail, she texted him a New York Times article about a different woman's experience being "roofied" and wrote to Zaczyk, "well fuck nvm i guess i got roofied."

27.     Shortly thereafter, Lehman texted Zaczyk a screenshot of an Instagram post by the alleged lookalike woman along with another text to Zaczyk stating "wtfffff 😂😂😂."

28.     Lehman then submitted a complaint to Airbnb, Inc. ("Airbnb") which alleged Zaczyk of "drugging and raping" her.

29.     Based on Lehman's complaint, Airbnb restricted Zaczyk's ability to access his Airbnb accounts, cancelled his Host account's upcoming reservations, disabled Zaczyk's ability

COMPLAINT - 3

1  to accept reservations for his Host property, and then cancelled his Guest and Superhost accounts,

2  both of which had almost entirely 5-star reviews spanning over a decade.



16  30.    Zaczyk immediately contacted Airbnb and denied Lehman's allegations.

17  31.    Zaczyk's Airbnb account remains suspended.

18  **C.    LEHMAN CONTACTED ZACZYK'S FRIENDS.**

19  32.    On July 12, 2024, Zaczyk's female friends contacted him regarding

20  communications they received from Defendants' business Instagram account (@manmanstudios).

21  33.    Lehman, through her Manman social media account, stated during her

22  communications with these women that Zaczyk, among other things, "roofied" her, choked her

23  during sexual intercourse to the point where she could not breathe, "ditched" her after having

24  sexual intercourse, returned to Seattle, and acted "super sus."

25  34.    Lehman stated during her communications with these women that she fell asleep

26  during sexual intercourse with Zaczyk but woke up when it became painful.

COMPLAINT - 4

35.    Lehman stated during her communications with these women that Zaczyk is targeting "long distance girls" for purposes of dating.



36.    Lehman's repeated and unwanted communications prompted Zacyzk's female friends to block her on their social media.

**D.    LEHMAN PUBLICLY POSTED FALSE INFORMATION ABOUT ZACZYK.**

37.    One week later, on July 19, 2024, Lehman posted anonymously to an online Seattle women's dating group about Zaczyk.

38.    Lehman posted the same false and damaging information about Zaczyk that she communicated to Zaczyk's female friends.

39.    Lehman even posted photographs of Zaczyk.

40.    All of Lehman's posts were accessible to the public.

COMPLAINT - 5



41.    In addition to her anonymous posts, Lehman wrote and posted five articles defaming Zaczyk on a public website called Medium.com.



42.    Within these articles, Lehman's defamatory claims remained consistent with her interactions and postings on all other public and private platforms discussed above.

43.    Lehman continued to claim that Zaczyk drugged and raped her in these articles.

44.    Lehman included photographs of Zaczyk, the company that employed him, and his job title in these articles.

COMPLAINT - 6

45.    Lehman made sure to spread the word about her defamatory articles by posting a screenshot of a Google search which includes her article titled, "Before you date Joe Zaczyk."



46.    Lehman encouraged others to view her article to ensure that it appeared on page 1 or 2 of a Google search of Zaczyk's name.

47.    Lehman was not satisfied with solely defaming Zaczyk personally: Lehman made sure to escalate the damage Plaintiff would suffer by extending it to his business as well.

48.    Lehman incited others to write public posts about Plaintiff's business and to deface the physical property.

49.    Her efforts were successful. Plaintiff's business property was defaced with graffiti writing, "Rapist" and "Rapist owned Biz."

COMPLAINT - 7

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

1
2
3
4
5
6
7
8
9
10
11
12
13



14   50.   Lehman ensured Plaintiff's physical property was destroyed, his personal
15   reputation was harmed, and that the false allegations lodged against him existed in perpetuity
16   online as she coordinated the publishing of an article that falsely depicts Plaintiff's actions.

17   51.   Lehman fed lies to a journalist at Slate, who eventually published an article about
18   Plaintiff, without naming him.

19   52.   However, Lehman linked to the article using Defendants' business Instagram
20   account and ensured that anyone who viewed the public content knew the writing referred to
21   Plaintiff.

22   53.   To be clear, Zaczyk has **never** sexually assaulted or raped any woman in any
23   capacity and certainly not through dating apps, as the Slate article (and Defendants) have suggested.

24   54.   As a result of Defendants' incessant defamatory posts and harassment, Plaintiff's
25   health deteriorated rapidly.

26

COMPLAINT - 8

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

55.     Plaintiff lost his appetite, and could not sleep, to the point where loved ones in his life encouraged him to go to Urgent Care as he needed immediate help, which he ultimately acted on.

56.     Plaintiff was terrified to be anywhere in public and stayed inside his home for weeks, while friends brought over food and drinks to check on him.

57.     As a result of Defendants' online smear campaign, Plaintiff was asked to resign from three lucrative opportunities that would have helped him earn substantial money through 2026.

58.     Plaintiff was immensely affected professionally but his personal reputation was tarnished as well.

59.     Due to Defendants' defamatory posts, it became impossible for Plaintiff to date in Seattle to the point where Plaintiff did not want to be seen in public due to embarrassment and intimidation.

60.     To this day, Plaintiff has struggled to develop any new professional and personal relationships because of the negative online depiction of Plaintiff and other defamatory statements that Lehman has curated through lies and deceit.

## CAUSES OF ACTION

## COUNT I

### DEFAMATION PER SE

61.      Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation contained in all preceding paragraphs as though set forth in full herein.

62.     Defendants' knowingly false statements, expressed as fact, constitute Defamation Per Se: (1) they charge Plaintiff with the infamous crime of rape, (2) subject him to hatred, distrust, ridicule, contempt and disgrace by tarnishing his business and personal reputation , and (3) injured him in his trade and profession, including by inciting others to commit vandalism.

COMPLAINT - 9

63.    Defendants' defamatory statements can be presumed as harmful as they alleged publicly that Plaintiff either was as a violent sexual predator, rapist, and someone who drugs and rapes women.

64.    Defendants' statements were intended to defame Plaintiff and tarnish his character in the eyes of the community.

65.    Plaintiff has been injured by such defamation in an amount to be proven at trial.

## COUNT II

## DEFAMATION

66.    Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation contained in all preceding paragraphs as though set forth in full herein.

67.    Defendants' knowingly false statements, expressed as fact, regarding Plaintiff were clearly made to injure his business and personal reputation, subject him to contempt and deprive him of the benefit of public confidence or social intercourse within the community.

68.    The intent of Defendants was to publicly portray Plaintiff as a violent sexual predator, rapist, and someone who drugs and rapes women.

69.    Proof of Defendant's success in defaming Plaintiff is evidenced, among other things, by his inability to engage with new clients or individuals in a professional or social manner as a direct consequence of Defendants' defamatory posts and statements.

70.    Other damages related to the Defendants' defamatory statements can and will be evidenced and proven at trial.

## COUNT III

## TORTIOUS INTERFERENCE

71.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the paragraphs above.

72.    As a direct and proximate result of Defendant's tortious conduct, Defendants are liable to Plaintiff for wrongfully and tortiously interfering with Plaintiff's business expectancies,

COMPLAINT - 10

1    contracts, and existing and prospective customers, all with an improper and malicious purpose,

2    without legal justification, in an attempt to intentionally cause damage to Plaintiff's business and

3    those business contracts, prospective profits and business opportunities, plus the interest, finance,

4    and other losses, employee wages, taxes, and other charges continuing to accrue.

5        73.    Plaintiff has been injured in an amount to be proven at trial.

6                                **JURY TRIAL DEMAND**

7        Plaintiff hereby demands a jury trial for all claims set forth in this Complaint.

8                                **PRAYER FOR RELIEF**

9        WHEREFORE, Plaintiff respectfully pray for the following relief:

10       A.    That the Court award damages with prejudgment interest to Plaintiff in an amount

11   to be determined at trial;

12       B.    That the Court award Plaintiff his attorneys' fees, expenses, and costs as permitted

13             under the law;

14       C.    That the Court grant preliminary and permanent injunctive relief and such other

15   equitable relief as is permitted and as the Court deems appropriate; and

16       D.    For such other and further relief as the Court deems reasonable and proper.

17

18       / /

19

20       / /

21

22       / /

23

24       / /

25

26

COMPLAINT - 11

1   Respectfully submitted this 19th day of December, 2025.

2                                   SEYFARTH SHAW LLP

3
                                    By:  /s/ Andrew R. Escobar
4                                        Andrew R. Escobar, WSBA No. 42793
                                         999 Third Avenue, Suite 4700
5                                        Seattle, Washington 98104-4041
                                         Phone: (206) 946-4910
6                                        Email: aescobar@seyfarth.com

7                                   MEISTER SEELIG & FEIN PLLC

8                                        Kevin M. Hutzel, *pro hac vice forthcoming*
                                         125 Park Avenue, 7th Floor
9                                        New York, New York 10017
                                         Phone: (212) 655-3500
10                                       Fax: (212) 655-3535
                                         Email: kmh@msf-law.com
11

12                                  *Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT - 12